ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of --                                    )
                                                 )
Odyssey International, Inc.                       )        ASBCA Nos. 62085, 62145, 62193
                                                 )
Under Contract No. W912HN-19-C-3005              )

APPEARANCES FOR THE APPELLANT:          Brian C. Johnson, Esq.
                                        H. Burt Ringwood, Esq.
                                        Alan R. Houston, Esq.
                                          Strong & Hanni Law Firm
                                          Salt Lake City, UT

APPEARANCES FOR THE GOVERNMENT:         Michael P. Goodman, Esq.
                                          Engineer Chief Trial Attorney
                                        Laura J. Arnett, Esq.
                                        Anna F. Kutz, Esq.
                                        Madeline Crocker, Esq.
                                          Engineer Trial Attorneys
                                          U.S. Army Engineer District, Savannah

OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

Appellant, Odyssey International, Inc., appeals from (1) the May 2019 default termination of its construction contract for failure to secure bonding (ASBCA No. 62085), (2) the government's assessment against Odyssey of $1.9 million in allegedly excess reprocurement costs (ASBCA No. 62145), and (3) a related Contractor Performance Assessment System (CPARS) evaluation rating Odyssey's performance "Unsatisfactory" (ASBCA No. 62193). The government requests summary judgment in these consolidated appeals, contending, *inter alia*: (1) the government acted within its discretion to terminate the contract for default and Odyssey has not demonstrated that its failure to perform was excusable (ASBCA No. 62085); (2) the government is entitled to the alleged excess reprocurement costs (ASBCA No. 62145); and (3) the CPARS rating was properly issued and not arbitrary and capricious or an abuse of discretion (ASBCA No. 62193). The Board has stayed proceedings pending resolution of the motion, and the parties have not yet engaged in any discovery.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

The following is not in genuine dispute. On March 27, 2019, Odyssey and the government contracted for appellant to construct an air traffic control tower for an Air

Force Base in North Carolina, for the amount of $19,832,000 (gov't mot. at 3 ¶¶ 1, 6; app. resp. at 3 ¶¶ 1, 6). The contract incorporates by reference Federal Acquisition Regulation (FAR) 52.228-15, PERFORMANCE AND PAYMENT BONDS – CONSTRUCTION (OCT 2010) (gov't mot. at 3 ¶ 7; *see* app. resp. at 3 ¶ 7). The contract provides that Odyssey submit performance and payment bonds to the government within 10 days after award (gov't mot. at 4 ¶ 8; *see* app. resp. at 3 ¶ 8). The contract also incorporates by reference FAR 52.228-1, BID GUARANTEE (SEP 1996), and FAR 52.249-10, DEFAULT (Fixed-Price Construction) (APR 1984) (gov't mot. at 4 ¶¶ 9-10; *see* app. resp. at 3 ¶¶ 9-10).

On April 10, 2019, Odyssey's insurance agent wrote to Odyssey:

> We have made vigorous efforts to market your account to these standard-market sureties CNA, Great American, Zurich, and NAS, and one of the leading specialty market sureties, HCC Toyoko Marine. Even with the $1,000,000 capitalization from Whitney's [Whitney McBride, Odyssey's principal shareholder (McBride decl. ¶ 1)] home refinance, none of these sureties will bond the [] project. The primary reason with each surety is way too little working capital in the company. To support a $40-50,000,000 backlog, the minimum working capital number is $2,500,000, and usually that is with a hefty bank line of credit and substantial net worth from personal indemnitors. While your profit projections for 2019 are very encouraging, it doesn't fix working capital soon enough for surety support on this size of work program.
>
> Additionally, . . . [t]he potential Hub-Zone violation is a big cloud until you are absolved of liability . . . .

(App. supp. R4, tab 24 at 30 (alterations added); gov't mot. at 9 ¶ 46; *see* app. resp. at 6 ¶ 46, 8 ¶ 8; gov't reply at 6 ¶ 8) On April 16, 2019, one surety wrote to Odyssey's insurance agent:

> Although the account is thin, the main reason we have to pass on this is due to the Hub Zone investigation in place. The law underlying the false claim (the false claim act) has no individual Hub Zone designation which would mean the company is subject to investigation. So even though the FBI has indicated it is not focusing on the company, there is still a potential that can occur and a surety who issues any bonds for the company who after the fact is found are

2

> not what the claim to be (Hub Zone compliant) are subject
> to triple damages.
>
> We, as a company, have seen this in the past and will not
> consider any requests with anything pending regarding
> Hub Zone claims. We would not be willing to consider
> anything for the account until this issue is completely
> resolved.

(App. supp. R4, tab 30 at 40-41; *see* app. resp. at 8 ¶ 10; gov't reply at 6 ¶ 10) On April 22, 2019, Odyssey wrote to the contracting officer (CO) indicating Odyssey's inability to obtain performance and payment bonds (gov't mot. at 4 ¶ 12; app. resp. at 3 ¶ 12). On April 25, 2019, the CO issued a cure notice to Odyssey, requiring Odyssey to produce performance and payment bonds by May 6, 2019 (gov't mot. at 4 ¶ 13; app. resp. at 3 ¶ 13).

On May 3, 2019, the CO received an email from Odyssey and a May 1, 2019 letter from Odyssey's insurance agent, re-iterating Odyssey's inability to obtain performance and payment bonds for the contract (gov't mot. at 4 ¶ 14; app. resp. at 3 ¶ 14; *see* R4, tab 4.03). In the email, Odyssey indicated that it was willing to "waive the time granted to cure" and that the government was "free to proceed in replacing Odyssey International, Inc. as the contractor on the project" (gov't mot. at 4 ¶ 14; app. resp. at 3 ¶ 14 (addressing R4, tab 4.03)). In the letter from the insurance agent to the CO, the insurance agent wrote:

> In the summer of 2018, Odyssey was informed that their
> former chief financial officer was a prime target in a
> criminal investigation by the US Attorney's Office. The
> investigation is ongoing and involves a potential HUB
> Zone violation by Odyssey and fraud by the former chief
> financial officer. . . . With all the sureties we approached,
> the "cloud" of this investigation materially impairs
> Odyssey's ability to obtain bonds on new projects until the
> case is settled.

(R4, tab 4.03 at 265)

As of May 6, 2019, Odyssey had not provided to the government the performance and payment bonds required by the contract for Odyssey to proceed with performance of the contract (gov't mot. at 5 ¶ 16; app. resp. at 4 ¶ 16). On May 6, 2019, the CO issued a notice terminating the contract for default for failure to provide performance and payment bonds, "effective immediately upon receipt of this Notice" (R4, tab 2.01; *see* gov't mot. at 5 ¶ 16; app. resp. at 4 ¶ 16). On May 8, 2019, the CO

issued a modification terminating the contract for default "in conjunction with the Notice of Termination dated May 6, 2019" (R4, tab 5.01; *see* gov't mot. at 5 ¶ 16; *see* app. resp. at 4 ¶ 16).

## DECISION

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Avant Assessment, LLC*, ASBCA No. 58867, 15-1 BCA ¶ 36,067 at 176,127 (citing FED. R. CIV. P. 56(a)). All significant doubt over factual issues must be resolved in favor of the party opposing summary judgment, and we draw all justifiable inferences in favor of the nonmoving party. *DCX-CHOL Enterprises*, ASBCA Nos. 61806, 61807, 20-1 BCA ¶ 37,552 at 182,341. There is no dispute that Odyssey failed to provide the bonds required by the contract; consequently, the government is entitled to judgment as a matter of law in ASBCA No. 62085 that Odyssey defaulted on the contract. *Marshall's Elec., Inc.*, ASBCA No. 59749, 16-1 BCA ¶ 36,300 at 177,017.

Otherwise, we are not persuaded that the government has met its burden, for at least one reason. The government cites FAR 52.249-10 (mot. at 4 ¶ 10), which, at paragraph (b), provides:

> The Contractor's right to proceed shall not be terminated nor the Contractor charged with damages under this clause, if . . . The delay in completing the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include . . . *acts of the Government in either its sovereign or contractual capacity* . . . .

48 C.F.R. § 52.249-10 (1984) (emphasis added). The driving issue of the appeals appears to be whether the reason Odyssey did not secure bonding was because it lacked working capital or because it was the subject of a federal criminal investigation into a potential "HubZone" violation (*see* gov't mot. at 1-3; *see* app. resp. at 1-2). The recitations set forth above demonstrate that, at this, pre-discovery stage, there is a genuine dispute as to that material fact. Even the government appears to contribute to that dispute by stating (gov't reply at 10), "[n]o time extension would resolve this situation since Odyssey is now the subject of impending criminal prosecution arising from that investigation."

The government also seems to say that even if the criminal investigation contributed to Odyssey's failure to obtain bonds, the default would not be excused (*see* gov't mot. at 2-3; *see* gov't reply at 11-13). The parties' briefing does not adequately

4

address that issue. For example, the United States Court of Claims held in a different but related context that:

> Although it is well settled that the mere financial incapacity of a contractor to perform is not a cause beyond its control and without its fault or negligence, it is equally well established that financial incapacity can be excusable when it was precipitated by causes beyond the control and without the fault or negligence of the contractor. This is *a fortiori* true when the precipitating causes are acts or omissions of the Government, the other contracting party.

*Nat'l E. Corp. v. United States*, 477 F.2d 1347, 1356 (Ct. Cl. 1973) (internal footnote citations omitted). In another different but related context, that court also held:

> [Plaintiff contractor] may not recover . . . [consequential] damages which allegedly resulted when, because of [the government's] actions, the bonding company or others refused to issue bonds on behalf of plaintiff on other contracts or work, thus crippling the contractor's ability to obtain new contracts or new work. Even if proven, these damages would be too remote and speculative to be recoverable.

*Olin Jones Sand Co. v. United States*, 225 Ct. Cl. 741, 743-44 (1980) (alterations added). And in another failure-to-bond case cited earlier in this opinion, we said, without elaborating upon the implications of the sentence emphasized below (which sentence the government quotes from, but only in its reply brief (reply at 9)):

> Appellant has not shown that its default on this contract was excusable. Accordingly, we find that the government was justified in terminating this contract for default under the Default clause of the contract. In addition, a contractor's failure to provide performance and payment bonds is a breach of a condition that can support a default termination. *This is a separate and distinct ground for default termination.*

*Marshall's Elec.*, 16-1 BCA ¶ 36,300 at 177,017 (emphasis added) (citations omitted).

Finally, the government says that Odyssey defaulted by anticipatorily repudiating the contract (gov't reply at 17-18). The government having raised that issue for the first time in its reply brief, we decline to address it further at this stage.

*See Buck Town Contractors & Co.*, ASBCA No. 60939, 18-1 BCA ¶ 36,951
at 180,059.

<u>CONCLUSION</u>

We find it unnecessary, at this stage, to address the parties' other arguments.
The government is granted summary judgment in ASBCA No. 62085 that Odyssey
defaulted on the contract; otherwise, the government's motion for summary judgment
is denied.

Dated:  June 2, 2020

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62085, 62145, 62193, Appeals of Odyssey International, Inc., rendered in conformance with the Board's Charter.

Dated:  June 2, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals